RECEIVED

MAR 1 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# United States District Court
## IN THE DISTRICT OF COLUMBIA

Rick Erwin,
Carol Erwin

Case No. **1:05-CV-01698(EGS)**

Plaintiff(s),

RESPONSE TO ORDER TO SHOW
CAUSE and/or MOTION TO DISMISS

v.

United States

Defendant.

Based upon a history of unsuccessfully seeking answers and agency records providing a basis for such answers, Plaintiff(s) have asserted that they have either exhausted administrative remedies available, or that such administrative remedies are inadequate.  In so claiming, Plaintiff(s) seek the Court's exercise of the equity jurisdiction conferred in Section 11 of the Judiciary Act of 1789, 1 Stat. 78.

A court sitting in equity cannot "ignore the judgment of Congress, deliberately expressed in legislation." Virginian R. Co. v. Railway Employees, 300 U. S. 515, 551 (1937).

In the OSC, the Court correctly reads § 7433(d)(1) in quoting "a judgment for damages shall not be awarded under [§ 7433] unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Court correctly reads the regulation governing such administrative remedies, stating: These regulations make clear that an "action for damages filed in federal district court may not be maintained unless the taxpayer has filed an administrative claim

pursuant to . . . this section." Id. § 301.7433-1(a)."

Accepting the regulation as definitive, the court states "Failure to comply...deprives the federal district court of jurisdiction. See Venen v. United States, 38 F.3d 100, 103 (3d Cir. 1994); McGuirl v. United States, 360 F. Supp. 2d 125, 128 (D.D.C. 2004)."

With all due respect, the history of IRC section 7433 shows that Venen was correctly decided under TBOR I's express proscription.    The current regulation, upon which McGuirl was decided, and upon which the instant case hinges, is an unreasonable interpretation of the current statutory provision; exceeds the authority of the current statutory provision by impermissibly extending the operation of the exhaustion requirement; and, by frustrating Congress' intent in creating, and amending, 7433; and by effectively converting a "7433 damages" claim into a "7422 refund" claim.

The history, i.e., the evolution of Congress' language, shows that Congress, in proscribing a damages award absent the Court's own satisfaction with respect to administrative exhaustion - without reinstating TBOR I's express proscription - left the court's equity jurisdiction intact.

HISTORY OF 7433  Taxpayer Bill of Rights (TBOR I)

Congress inserted 7433 into the Internal Revenue Code in the Taxpayer Bill of Rights.  Although Plaintiff(s) have been unable to find the actual Act of Congress, a comprehensive discussion was published by the American Bar Association:

> "Section 7433 also removes tax collection controversies between taxpayers and the IRS from the jurisdiction of federal courts and places them in the IRS administrative bureaucracy. Section 7433(d) requires taxpayers to exhaust their administrative remedies before filing section 7433 actions in district court. In 1996, the Taxpayer Bill of Rights 2 (TBOR 2) eliminated the exhaustion

> requirement, permitting district courts to hear section 7433 claims provided that damage awards are reduced when the claimant does not exhaust administrative remedies."

The Bar is correct regarding the 1996 amendment.

HISTORY OF 7433  Taxpayer Bill of Rights II (TBOR II)

PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act To amend the Internal Revenue Code of 1986 to provide for increased taxpayer protections,"  TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section 7433(d) to read:

> "The amount of damages awarded under subsection (b) may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Bar then opined that

> "However, Congress reinstated the exhaustion requirement in the 1998 Act."

The Bar is not precisely correct in this assertion.  TBOR III, found in the IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment.  Section 7433, as re-amended by TBOR III, is silent with respect to bringing or maintaining a 7433 action.  The revision states no more than "...no judgment shall be awarded..." unless the Court is satisfied that administrative remedies available have been exhausted.    7433, in its current incarnation, neither prohibits, nor precludes, equitable relief.  To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that..." in the absence of the Court's satisfaction as to administrative exhaustion, "...no judgment shall be awarded...".

Before proceeding to the issue of the Court's equity jurisdiction, plaintiff(s)

respectfully direct the Court's attention to what the Bar had to say about the

re-amendment:

> "Congress should not have re-imposed the exhaustion provision. Many plaintiffs
> bring their actions to federal court under section 7433 because they do not trust
> the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do
> not understand the meaning of exhaustion of administrative remedies. These
> plaintiffs should not be penalized by their good-faith ignorance; instead, federal
> courts should hear their claims if valid. In addition, few pro se plaintiffs have
> actual notice of the process established by Treasury Regulation section
> 301.7433-1. Congress should understand many people's distrust of the ability of
> the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual

notice of the process" is but one of many reasons the Court should exercise its equity

powers.

DISTRICT COURT IS A COURT OF EQUITY

The Judiciary Act of 1789 conferred on the federal courts jurisdiction over "all

suits . . . in equity." 1 Stat. 78. Section 11 provided that the circuit courts should have

"cognizance . . . of all suits of a civil nature at common law or in equity" in cases

appropriately brought in those courts. This provision is perpetuated in § 24(1) of the

Judicial Code, 28 U.S.C. § 41(1), which declares that the district courts shall have

jurisdiction of such suits. Substantially, then, the equity jurisdiction of the federal courts

is the jurisdiction in equity exercised by the High Court of Chancery in England at the

time of the adoption of the Constitution and the enactment of the original Judiciary Act,

1789 (1 Stat. 73). Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 568 (1939).

See also, e.g., Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382, n. 26 (1949);

Guaranty Trust Co. v. York, 326 U.S. 99, 105 (1945); Gordon v. Washington, 295 U.S.

30, 36 (1935). The substantive prerequisites for obtaining an equitable remedy as [527

U.S. 319] well as the general availability of injunctive relief are not altered by [Rule 65]

and depend on traditional principles of equity jurisdiction. A. Dobie, Handbook of

Federal Jurisdiction and Procedure 660 (1928).

Federal equity is a separate legal system. Guaranty Trust Co. v. York, 326 U.S.

99, 105 (1945). The "jurisdiction" thus conferred on the federal courts to entertain suits

in equity is an authority to administer in equity suits the principles of the system of

judicial remedies which had been devised and was being administered by the English

Court of Chancery at the time of the separation of the two countries. Payne v. Hook, 7

Wall. 425, 430; In re Sawyer, 124 U.S. 200, 209-210; Matthews v. Rodgers, 284 U.S.

521, 525; Gordon v. Washington, 295 U.S. 30, 36. This clause of the statute does not

define the jurisdiction of the district courts as federal courts, in the sense of their power

or authority to hear and decide, but prescribes the body of doctrine which is to guide

their decisions and enable them to determine whether, in any given instance, a suit of

which a district court has jurisdiction as a federal court is an appropriate one for the

exercise of the extraordinary powers of a court of equity. Atlas Life Ins. Co. v. W. I.

Southern, Inc., 306 U.S. 563, 568 (1939), citing Massachusetts State Grange v.

Benton, 272 U.S. 525, 528; Pennsylvania v. Williams, 294 U.S. 176, 181, and cases

cited.{1} [306 U.S. 569]

WHY THE COURT SHOULD EXERCISE ITS EXTRAORDINARY POWERS

Subject-matter jurisdiction presents a threshold question. Federal courts of

limited jurisdiction have only the power to hear those cases over which Congress has

conferred subject-matter jurisdiction upon them. In this case, the district court has

subject-matter jurisdiction pursuant to 7433; the sole limitation in the current provision is

whether the Court may grant judgment in favor of the Plaintiff(s) without first satisfying itself that Plaintiff(s) have exhausted administrative remedies "available". While administrative remedies are called for in 7433, it is the "availability" of those remedies upon which the limitation rests.

Based upon the language of the regulation itself, and upon repeated agency actions of the Internal Revenue Service demonstrating disregard of governing statutes, regulations, and Service policies, Plaintiff(s) contend that the administrative "remedies" purportedly provided for - as implemented by regulation - are at best unavailable, and at worst, wholly inadequate.

AVAILABLITY OF REMEDY

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Deccision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement.    IRS

intends not to be sued.

To show that the above history accurately reflects IRS intent, the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected.

Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit. This half-year waiting period is extreme. In the context for which the provision was created, this is tantamount to a complete frustration of Congress' intent. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate. SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language

employed by Congress. See: Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. Richards v United States, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, Consumer Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies, shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention, have been exhausted.

Yet the regulation quoted by the Court states that "...no suit may be maintained..." in the absence of administrative exhaustion. This is the language that Congress expressly removed from 7433 in TBOR II; that more restrictive language was omitted from the TBOR III re-amendment restricting award of judgment. It must be assumed that Congress, in omitting TBOR I's more restrictive language from TBOR III's re-amendment, intended that omission.

As stated by the Supreme Court in Morton v. Ruiz, 415 U.S. 199 (1974): The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, FMC v. Seatrain Lines, Inc., 411 U.S. 726 (1973); Dixon v. United States, 381 U.S. 68, 74 (1965); Brannan v. Stark, 342 U.S. 451 (1952), but also to employ

procedures that conform to the law. See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), quoted in Adamo Wrecking Co. v. United States, 434 U.S. 275, 287 n. 5 (1978), and cited in SEC v. Sloan, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." SEC v. Sloan, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless or intentional actions" is changed; one must have "…damages sustained as a proximate result of the reckless or international actions…" (emphasis added).

To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form. To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, the threshold issue of whether an assessment has

been properly made is raised.  If IRS refuses to investigate that threshold issue, IRS

denies a meaningful Collection Due Process Hearing; a "collection" might not yet have

occurred, yet Plaintiff(s) right to challenge the existence of the underlying liability -

established in the statutory provision (6330(c)(2)(B)) - is thwarted.

Reviewing courts are not obliged to stand aside and rubber-stamp their

affirmance of administrative decisions that they deem inconsistent with a statutory

mandate or that frustrate the congressional policy underlying a statute. Such review is

always properly within the judicial province, and courts would abdicate their

responsibility if they did not fully review such administrative decisions.  National Labor

Relations Board v. Brown, 380 U.S. 278, 291-292.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS

cannot be trusted to administer the tax code without supervision.  Indeed, in the words

of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at

Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary
> compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of

governing statutes and regulations have an avenue to be made whole under section

7433, albeit with a prior administrative review.  Once again, the key is availability of the

administrative remedy.  Availability can be likened to adequacy.  As a matter of broad

administrative law, if administrative remedy is inadequate, it need not be pursued.

The Morton Court supra, opined, at 235:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, available in form, is unavailable in substance.

The Court will note that Plaintiff(s) alleged in paragraph 7 of the Complaint numerous failures of IRS to comply with governing statutes, regulations, and policies. These allegations, for purposes of motion to dismiss, have been admitted.   By way of example only, one of the allegations in the Complaint's paragraph 7 is that no review with respect to lien or levy was made in accordance with Section 3421 of RRA 98, excerpted here:

> SEC. 3421. <<26 USC 6301 note>> APPROVAL PROCESS FOR LIENS, LEVIES, AND
> SEIZURES.
>   (a) In General.--The Commissioner of Internal
> Revenue shall develop and implement procedures under which--
>       (1) a determination by an employee to file a notice of lien
> or levy with respect to, or to levy or seize, any property or
> right to property would, where appropriate, be required to be
> reviewed by a supervisor of the employee before the action was
> taken; and
>       (2) appropriate disciplinary action would be taken against
> the employee or supervisor where the procedures under paragraph
> (1) were not followed.
>
>   (b) Review Process.--The review process under subsection (a)(1) may
> include a certification that the employee has--
>       (1) reviewed the taxpayer's information;
>       (2) verified that a balance is due; and
>       (3) affirmed that the action proposed to be taken is
> appropriate given the taxpayer's circumstances, considering the

amount due and the value of the property or right to property.

(c) Effective Dates.--
    (1) In general.--Except as provided in paragraph (2), this
section shall take effect on the date of the enactment of this
Act.
    (2) Automated collection system
actions.--In the case of any action under an automated
collection system, this section shall apply to actions initiated
after December 31, 2000.

The defendant has admitted this allegation.

    Yet another example is the allegation that IRS failed to afford a meaningful

Collection Due Process Hearing as mandated by RRA 98's section 3401, excerpted

here:

    SEC. 3401. DUE PROCESS IN INTERNAL REVENUE SERVICE COLLECTION
    ACTIONS.
    ***

        "PART II--LIENS".

    (b) Notice and Opportunity for Hearing Before Levy.--Subchapter D of
chapter 64 (relating to seizure of property for collection of taxes) is
amended by inserting before the table of sections the following:

        "Part I.  Due process for collections.
        "Part II.  Levy.

        "PART I--DUE PROCESS FOR COLLECTIONS

        "Sec. 6330. Notice and opportunity for hearing before
            levy.

"SEC. 6330. NOTICE AND OPPORTUNITY FOR HEARING BEFORE LEVY.

    ***
    "(c) Matters Considered at Hearing.--In the case of any hearing
conducted under this section--
        "(1) Requirement of investigation.--The appeals officer
    shall at the hearing obtain verification from the Secretary that
    the requirements of any applicable law or administrative

procedure have been met.
    "(2) Issues at hearing.--
        "(A) In general.--The person may raise at the
hearing any relevant issue relating to the unpaid tax or
the proposed levy, including--
          "(i) appropriate spousal defenses;
          "(ii) challenges to the appropriateness of
collection actions; and
          "(iii) offers of collection alternatives,
which may include the posting of a bond, the
substitution of other assets, an installment
agreement, or an offer-in-compromise.
        "(B) Underlying liability.--The person may also
raise at the hearing challenges to the existence or
amount of the underlying tax liability for any tax
period if the person did not receive any statutory
notice of deficiency for such tax liability or did not
otherwise have an opportunity to dispute such tax
liability.
    "(3) Basis for the determination.--The determination by an
appeals officer under this subsection shall take into
consideration--
        "(A) the verification presented under paragraph
(1);
        "(B) the issues raised under paragraph (2); and
        "(C) whether any proposed collection action
balances the need for the efficient collection of taxes
with the legitimate concern of the person that any
collection action be no more intrusive than necessary.
    "(4) Certain issues precluded.--An issue may not be raised
at the hearing if--
        "(A) the issue was raised and considered at a
previous hearing under section 6320 or in any other
previous administrative or judicial proceeding; and

[[ 112 STAT. 749]]

        "(B) the person seeking to raise the issue
participated meaningfully in such hearing or proceeding.
This paragraph shall not apply to any issue with respect to
which subsection (d)(2)(B) applies.

  "(d) Proceeding After Hearing.--
    "(1) Judicial review of determination.--The person may,
within 30 days of a determination under this section, appeal

such determination—
> "(A) to the Tax Court (and the Tax Court shall have
> jurisdiction to hear such matter); or
> "(B) if the Tax Court does not have jurisdiction of
> the underlying tax liability, to a district court of the
> United States.

If a court determines that the appeal was to an incorrect court,
a person shall have 30 days after the court determination to
file such appeal with the correct court.

The "impartial hearing officer" failed to "obtain verification" in accordance with

the statute, as that requirement was explained by IRS Chief Counsel in Collection

Bankruptcy and Summons Bulletin No. 487, published by the IRS Office of Chief

Counsel in April 2001:

> "I.R.C. § 6330(c)(1) requires the Appeals officer to "obtain verification from the
> Secretary that the requirements of any applicable law or administrative
> procedure have been met." This provision and the regulations make clear that it
> is not the Appeals officer but the IRS office or officer pursuing collection that is
> required to provide the verification. See Temp. Treas. Reg. §§ 301.6320-1T(e)(1)
> and 301.6330-1T(e)(1). The legislative history reinforces this interpretation:
> "During the hearing, the IRS is required to verify that all statutory, regulatory, and
> administrative requirements for the proposed collection action have been met."
> H. Rep. 105-599, 105th Cong., 2d Sess., p. 264. I.R.C. § 6330(c)(3)(A) requires
> the Appeals officer in making his or her determination as to the appropriateness
> of the collection action to "take into consideration" this verification. Temp. Treas.
> Reg. §§ 301.6320-1T(e)(3), Q&AE1 and 301.6330-1T(e)(3), Q&A-E1 reinforce
> the statutory language by stating that "Appeals will consider the following matters
> in making its determination: (i) Whether the IRS met the requirements of any
> applicable law or administrative procedure." The Manual, consistent with the
> statute and temporary regulation, requires that the Appeals officer document, in
> a case memorandum and in the attachment to the Notice of Determination, that
> he or she obtained "verification from the Service that the requirements of any
> applicable law or administrative procedures have been met." IRM
> 8.7.1.1.9.11(8)." (emphases added)

The "impartial hearing officer" failed to investigate, let alone verify, the existence

of the alleged underlying liability.  SEE: Admitted Allegations Provide More Evidence of

Unclean Hands, below.

IRS has also violated numerous Service policies made enforceable by section

1203(b) of RRA 98, the relevance of which is discussed immediately below the Service

Policies listed.

With respect to Plaintiff(s), IRS has disregarded Service Policy P-1-1, Mission of the

Service:

> (1)    Mission of the Service: Provide America's taxpayers top quality service by
> helping them understand and meet their tax responsibilities and by applying the
> tax law with integrity and fairness to all.
>
> IRM 1.2.1.2.11
>
> Despite Plaintiff(s) repeated efforts to gain an understanding of their

responsibilities through examination of IRS records, defendant's agent has failed to

comply with Service Policy.

IRS has disregarded Service Policy P-5-2

> (1)    COLLECTING PRINCIPLES: All our decisions about collecting must be
> guided by these principles. To the extent that they are, we will succeed in our
> mission.
> (2)    SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous,
> responsive, and effective service and assistance in all their dealings with the
> Service. We will actively assist taxpayers who try to comply with the law, and
> work to continually improve the quality of our systems and service to meet the
> needs of our customes. All taxpayers, whether delinquent or fully compliant, are
> entitled to prompt and professional service whenever they deal with Service
> employees.
> (3)    TAXPAYER RIGHTS-We will observe taxpayers' rights, including their
> rights to privacy and to fair and courteous treatment. This affirms our
> commitment to observe both the spirit as well as the letter of all legal
> requirements, including the Taxpayer Bill of Rights I and II and the IRS
> Restructuring and Reform Act of 1998. Taxpayers will be protected from
> unauthorized disclosure of information.
> (4)    COMPLIANCE-The public trust requires us to ensure that all taxpayers
> promptly file their returns and pay the proper amount of tax, regardless of the
> amount owed: The public as a whole is our customer, not just delinquent
> taxpayers. Our customers expect us to promote voluntary compliance by
> ensuring that all promptly pay their fair share. Employees should work with
> taxpayers to meet all their filing and paying requirements, not only the
> delinquency at hand. This involves identifying and addressing non-compliance to

prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(5)    CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

1.2.1.5.2

By failing to assist Plaintiff(s) in our attempts to comply with the law, defendant's

agent has failed to comply with Service Policy.

IRS has disregarded Service Policy P-5-16

(1)    Forbearance when reasonable doubt exists that assessment is correct:

Whenever a taxpayer raises a question or presents information creating

reasonable doubt as to the correctness or validity of an assessment, reasonable

forbearance will be exercised with respect to collection provided (1) adjustment

of the taxpayer's claim is within control of the Service, and (2) the interests of the

Government will not be jeopardized.

IRM 1.2.1.5.3

Despite Plaintiff(s) repeated efforts to verify any claim of obligation through

examination of IRS assessment records, defendant's agent has failed to comply with

Service Policy.

IRS has disregarded Service Policy P-5-34

(1)    Collection enforced through seizure and sale of the assets occurs only

after thorough consideration of all factors and of alternative collection methods: The facts of a case and alternative collection methods must be thoroughly considered before determining seizure of personal or business assets is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve past due taxes while staying current with all future taxes will be considered. Opposing considerations must be carefully weighed, and the official responsible for making the decision to seize must be satisfied that other efforts have been made to collect the delinquent taxes without seizing. Alternatives to seizure and sale action may include an installment agreement, offer in compromise, notice of levy, or lien foreclosure. Seizure action is usually the last option in the collection process.

(2)     All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.

1.2.1.5.7

IRS has disregarded Service Policy P-5-47

(1)     Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: *** All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.

(2)     *****.

(3)     Other notice of lien filing requirements: A notice of lien must be filed:

1.     prior to instituting levy action on property in possession of the taxpayer; and

2.     prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.

IRM 1.2.1.5.13

By issuing a Notice of Levy prior to filing a notice of lien, defendant's agent has

failed to comply with Service Policy.

IRS has disregarded Service Policy P-6-20

(1)     Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.

(2)     Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.

IRM 1.2.1.6.7

By refusing Plaintiff(s) requests for comprehensive, accurate, and timely

information on the requirements of tax law and regulations, defendant's agent has failed

to comply with Service Policy.

IRS has disregarded Service Policy P-6-21

(1)    Educational programs provided: The Service will conduct taxpayer
education programs for taxpayers whose needs for tax information are most
effectively met by these means.
(2)    These educational programs will include those established to assist
individuals in meeting their current and future tax obligations, as well as
programs designed to instruct groups of taxpayers or prospective taxpayers on
their rights and responsibilities under the tax law or on specific tax provisions of
common interest.

1.2.1.6.8

By failing to instruct groups of taxpayers or prospective taxpayers on rights and

responsibilities under the tax law or on specific tax provisions, defendant's agent has

failed to comply with Service Policy.

IRS has disregarded Service Policy P-10-42

(1)    All bona fide complaints or allegations will be investigated: An
investigation will be made of all bona fide complaints or allegations of
misconduct or irregularities concerning Service officials or employees and in
certain instances investigations may be made of non-Service personnel when
their actions may affect the integrity of the Service.

IRM 1.2.1.10.4

By refusing to investigate Plaintiff(s) complaints or allegations of misconduct or

irregularities, defendant's agent has failed to comply with Service Policy.


Particularly relevant to the instant case, Service Policy P-5-2(3) purports a

"commitment to observe both the spirit as well as the letter of all legal requirements,

including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act

of 1998", yet no IRS publication, publicly available, notifies Citizens of the right to

pursue damages under section 7433, let alone any reference to administrative

procedures.

CLEAN HANDS DOCTRINE

As an example of IRS' unclean hands, Plaintiff(s) provide this excerpt from the

NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS

EXECUTIVE SUMMARY:

THE MOST SERIOUS PROBLEMS ENCOUNTERED BY TAXPAYERS

6. Levies on Social Security Payments. In general, recipients of Social Security
benefits are elderly or disabled workers, or the surviving dependents of
deceased workers. The IRS continues to process levies on Social Security
payments without sufficient managerial review, causing undue burden on a
vulnerable population of taxpayers. The National Taxpayer Advocate urges the
IRS to implement safeguards that would prevent levies from being imposed on
Social Security payments to low income and other at-risk taxpayers.
7. Appeals Campus Centralization. The IRS Office of Appeals ("Appeals") has
centralized its work on certain types of cases at six IRS campuses; these cases
previously were resolved in field offices closer to taxpayers. Appeals campus
centralization is aimed at decreasing the time it takes for a taxpayer to resolve a
case. While this aim is appropriate and admirable, the National Taxpayer
Advocate is concerned that centralizing Appeals case resolution may actually
increase taxpayer burden. Centralization may reduce opportunities for taxpayers
to have their cases resolved at the local level, diminish working relationships
between taxpayers and Appeals employees, increase emphasis on processing at
the expense of independent judgment, and diminish service for low income and
unrepresented taxpayers. The National Taxpayer Advocate urges Appeals to
alleviate these problems and protect taxpayers' appeal rights by developing
specific training that will help employees carry out Appeals' independent mission
in the campus environment. We recommend that Appeals monitor campus
activity to ensure that taxpayers - particularly low income taxpayers - receive full
and fair consideration of their cases and are adequately notified of their right to
request a case transfer to a local Appeals office.
11. Automated Collection System Levy Releases. Collection efforts through the
IRS's Automated Collection System (ACS) can result in levies of bank accounts,
wages, or other income such as Social Security. In response to these levies,

taxpayers will contact the IRS seeking to enter into a collection alternative, such as an installment agreement. The IRS can also designate an account as "currently not collectible" if the taxpayer can demonstrate a financial hardship. The Internal Revenue Code and Treasury Regulations require that the IRS promptly release levies when taxpayers enter into installment agreements or when they demonstrate the existence of a hardship. Some taxpayers encounter problems with the levy release, including clerical errors, delays that result in additional levies on taxpayer assets or income, or the IRS not returning levy proceeds when a delayed levy release results in additional levies. Delays are also due in part to taxpayers' failure to request expedited levy releases so that the release can be faxed to the third party levy source. The IRS has improved the levy release process for currently-not-collectible accounts and has agreed to consider similar system changes for installment agreements, and require additional training for employees. We encourage the IRS to consider revising its procedures so that all levy releases are assumed to require expedited procedures.

15. Mandatory Briefings for IRS Employees on TAS. Internal Revenue Code § 7803(c)(2)(C)(ii) requires the National Taxpayer Advocate to develop guidance for all IRS officers and employees, outlining the criteria for referral of cases to the Taxpayer Advocate Service (TAS). The IRS has denied the request of the National Taxpayer Advocate to include TAS training among its annual mandatory briefings for all employees. Instead, the IRS has agreed to provide TAS training to contact employees in the Wage and Investment and Small Business/Self-Employed operating divisions on a one-time basis, and urges TAS to train the rest of the employees through methods such as the IRS intranet, inserts in employee Earnings & Leave statements, and "wallet cards." The National Taxpayer Advocate urges the IRS to rethink its position and grant her request to make TAS training mandatory for all employees.

Based upon the foregoing opinion of the National Taxpayer Advocate, and the

admitted allegations in Plaintiff(s) Complaint, IRS, and the Principal for which it

operates, comes with unclean hands, and the United States should not now be allowed

to invoke administrative provisions to preclude having to answer for IRS' willful

disregard.

## SERVICE POLICIES ARE ENFORCEABLE

Many, if not all of the "disregards" alleged, and admitted, are grounds for

termination of employment of the offending personnel.  RRA 98 section 1203(b) is

excerpted:

    1203(b) Acts or Omissions.—The acts or omissions referred to under subsection (a) are--

    (1) willful failure to obtain the required approval signatures on documents authorizing the seizure of a taxpayer's home, personal belongings, or business assets;

    (2) providing a false statement under oath with respect to a material matter involving a taxpayer or taxpayer representative;

    (3) with respect to a taxpayer, taxpayer representative, or other employee of the Internal Revenue Service, the violation of--

        (A) any right under the Constitution of the United States; or

        (B) any civil right established under--

           (i) title VI or VII of the Civil Rights Act of 1964;

           (ii) title IX of the Education Amendments of 1972;

           (iii) the Age Discrimination in Employment Act of 1967;

           (iv) the Age Discrimination Act of 1975;

           (v) section 501 or 504 of the Rehabilitation Act of 1973; or

           (vi) title I of the Americans with Disabilities Act of 1990;

    (4) falsifying or destroying documents to conceal mistakes made by any employee with respect to a matter involving a taxpayer or taxpayer representative;

    (5) assault or battery on a taxpayer, taxpayer representative, or other employee of the Internal Revenue Service, but only if there is a criminal conviction, or a final judgment by a court in a civil case, with respect to the assault or battery;

    (6) violations of the Internal Revenue Code of 1986, Department of Treasury regulations, or policies of the Internal Revenue Service (including the Internal Revenue Manual) for the purpose of retaliating against, or harassing, a taxpayer, taxpayer representative, or other employee of the Internal Revenue Service;

    (7) *****;
    (8) *****;
    (9) *****; and
    (10) *****.

Yet, to the extent of Plaintiff(s) knowledge and belief, no IRS agent has been terminated for misconduct. Instead, Congress' good faith has been abused, and offenders have instead been transferred under authority of section 1203(c), excerpted here:

> (c) Determination of Commissioner.--
>     (1) In general.--The Commissioner of Internal Revenue may take a personnel action other than termination for an act or omission under subsection (a).

ADMITTED ALLEGATIONS PROVIDE MORE EVIDENCE OF UNCLEAN HANDS

Among the allegations admitted by defendant's failure to deny/motion to dismiss

is that no proper assessment has been made for any year in question, i.e., that no

document signed by a duly appointed Assessment Officer exists. On the basis of

information contained in the Internal Revenue Manual, Plaintiff(s) has/have identified

this document as a Form 23C. As discussed in the defendant in March v. Internal

Revenue Service -- 335 F.3d 1186 (2003):

> "[R]egardless of the form used, the IRS must comply with the regulations governing the assessment process. The purpose of these regulations is to ensure both the efficiency and the accuracy of the assessment process. The signature requirement in 26 C.F.R. § 301.6203-1 appears to serve multiple purposes. The requirement ensures that an assessment officer reviews the assessment before it is sent to the taxpayer, and the placing of the officer's signature establishes an effective date of the assessment that is relevant for certain timing requirements.

> In discussing how IRS circumvents the legal requirement, the March Court said:

> "In reality, the courts have created a legal fiction in which the submission of Form 4340, which lists a "23C Date," creates a presumption that a Form 23C was signed. While the courts have said that this presumption is rebuttable by the taxpayer, the IRS concedes that "when the Debtors argue that the 23C Forms were Never produced, it is because they probably do not physically exist." Aple. Br. at 15 n.2. In other words, the IRS gets the benefit of a presumption that they admit is likely false."

> The Court will take Judicial Notice that the Form 4340 "which lists a '23C Date,'"

(sic) certifies only that IRS computer records reflect certain data; it does not certify the accuracy of that data. In order to be admissible in evidence, the accuracy of the data must be ascertained, and the defendant's counsel knows this. See: Brief on Admissibility of Computer Evidence, attached.

Lastly, counsel for the United States is well aware that "[U]nder the Administrative Procedure Act, 5 U.S.C. 704, a person aggrieved by an agency action can seek judicial review of the action without exhausting an available administrative appeal, unless the agency's regulations provide both (1) that the administrative appeal must be taken, and (2) that during the pendency of the administrative appeal the agency action shall be inoperative." Darby v. Cisneros, 509 U.S. 137 (1993), quoted in the U.S. Attorney's Manual, Civil Resource Manual, Title 4.

The filing of an administrative claim under regulation 301.7433-1 fails to meet the second prong of 5 U.S.C. 704, as recognized in Darby, and as counsel well knows.

SUMMARY

The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency. The administrative remedies provision was intended to facilitate that right. Paraphrasing Pacific Tel. & Tel. Co. v. Public Util. Comm'n, 443 U.S. 1301 (1979):

> Here, the administrative action [the regulation] was the source of the claimed wrong, not a possible avenue for its redress.

Plaintiff(s) respectfully request(s) the Court exercise its equitable powers; find that administrative remedies are inadequate, futile, or have otherwise been exhausted, and direct the defendant to answer the suit.

Dated: _3 - 15_____, 2006

_____
Rick Erwin
6120 N Lakeway Dr.,
Warr Acres OK 73132

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on defendates' attorney of record at his/her address of record.

Dated: _3 -15_____, 2006

_____
Rick Erwin